UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------X
GOTHAM CLEANERS, INC., CORY PERLSON and
BRIANNA PERLSON,

                                                                                                                   Civil Action No.

                                                       Plaintiffs,

      -against-


DEPENDANCE PLATINUM FL LLC,

                                                      Defendant.
-------------------------------------------------------------------------X

**DECLARATION OF CORY PERLSON IN SUPPORT**

      I, Cory Perlson, declare pursuant to 28 U.S.C. § 1746 as follows:

      1.      I am a plaintiff in this action and have personal knowledge of the facts stated herein. I respectfully submit this affirmation in support of Plaintiff Gotham Cleaners, Inc. ("Gotham"), myself and my wife Brianna Perlson's (together, "Plaintiffs") application pursuant to Fed. R. Civ. P. Rule 65, for a temporary restraining order and injunction: (a) enjoining the enforcement of MCA dated September 12, 2025 attached to the Verified Complaint as **Exhibit B** (the "MCA") by and among Plaintiff on the one hand and Defendant Dependance Platinum (the "Defendant" or "Dependance") on the other, pursuant to which Defendant is currently seeking to or outright collecting payments directly from Gotham's customers (the "Customers"), critically jeopardizing Gotham's business; (b) restraining and enjoining Defendant during the pendency of this action from employing any methods of enforcement or collection of any alleged debt allegedly owed by Plaintiffs to Defendant, including but not limited to via the issuance of UCC lien letters (the "Letters of Attornment"); (c) directing Defendant to withdraw any lien letter previously sent out; (d) directing that during the pendency of this action, any UCC lien letter sent by Defendant or that

has already been sent by Defendant shall be null and void and of no force or effect, and that any third party served with such UCC lien letter ignore same; (e) granting such other and further relief as this Court deems just and proper.

2. Temporary and permanent injunctive relief is warranted for the reasons set forth below. A true and correct copy of the Verified Complaint and its exhibits is attached as **Exhibit A**. For the sake of brevity, the background facts are set forth below:

## FACTUAL BACKGROUND

3. The Movants were not represented by counsel when, on September 12, 2025, they entered into a purported merchant cash advance agreement with the Lender (the "MCA"), pursuant to which contained the following terms: that Gotham would sell $391,755.00 of its future receivables (the "Debt") to the Defendant in exchange for payment of $245,000.00, of which $12,250.00 was ostensibly deducted as an unspecified origination fee (the "Origination Fee"). Given this deducted Origination Fee, the Movants' net receipt of funds under the MCA was $232,000 (the "Original Loan").[1]

4. The Movants entered into this purported MCA, because at the time, Plaintiffs were in desperate need of funds due to two prior purported cash advance agreements from Defendant because of decreased receivables from Gotham. Rather than abide by the reconciliation process, Defendant created yet another purported merchant cash whereby itself what it claimed was owed. Proof of this is set forth on page 17 of the MCA. After paying itself and another third party, Gotham only received $1,101.47 of net funds.

---

[1] In addition, in connection with the MCA, Brianna and I entered into a Guaranty of Performance Agreement with the Lender whereby they guaranteed Gotham's performance under the MCA, which I understand from my counsel further demonstrates that this was a loan, not a merchant cash advance. See Section 30(a) of the MCA.

2

5. The MCA set forth onerous terms that annually require payment of interest in the amount of over 750 percent per annum. This is because the MCA required daily payments of $4,990.51 (two percent of the principal), totaling approximately $149,715.30 per month. By its terms, the MCA would be "paid off" in just over two- and one-half months.

6. If the MCA required full payment one calendar year, the MCA carried interest of 62.5 percent per annum ($391,755.00 balance for $245,000 principal). However, because MCA by its terms required full payment in just two and half months, the annual interest rate is 750 percent per annum. I understand from my counsel that interest at such a high rate is criminally usurious.

7. Gotham did not have the receivables to make such a high daily payment, which was computed arbitrarily to manufacture a default. Indeed, the MCA does not specify how it came to require such a high daily payment other than by stating in conclusory fashion that it used past data, which I believe is inaccurate.

8. While the language of the MCA states it is not loan, that assertion is not accurate. Indeed, the MCA required absolute payment, rendering it a loan notwithstanding any self-serving language to the contrary. Section 15 of the MCA provides that if one payment (or non-monetary default) occurs, Dependance can increase the daily to 100% and accelerate the amount due, plus an arbitrary "collection fee" in the amount of 33.33% of the unpaid balance. In other words, one missed daily payment (with no cure period) entitles Dependance to absolute repayment in full. This is exactly what Dependance is pursing even though I had told them I needed to reconcile the account due to lower receivables.

9. In that regard, on or about November 18, 2025, I had a telephonic conversation with Dependance's principal where I personal informed him of this. He responded that he understood

3

my issue. However, rather than actually permit reconciliation as required under the MCA, he sent an onerous forbearance agreement to me that included various waivers, a 33% of the alleged outstanding balance as some sort of collection fee (purported for legal fees of which I have no knowledge of). See Ex. B. This was no reconciliation, but rather a strongarm tactic to have me waive my legal rights.

10. While I was contemplating executing the document due to the dire situation, without any notice, on or about November 19, 2025, Dependance sent out attornment letters exercising its rights under the Uniform Commercial Code to, upon information and belief, to all 300 of Gotham's Customers, directing the customers to pay Dependance directly for a sum of $375,011.83, which must include all sorts of the additional fees set forth above, of which I have no personal knowledge of.

11. A true and correct copy of one such letter received by a customer on November 25, 2025, is attached as **Exhibit C**. It is significant to note that Dependance is seeking to improperly utilize a UCC-1 statement from a prior MCA in 2024. The MCA at issue was executed on September 12, 2025. This is an additional reason why the attornment letters should be declared a nullity.

12. As a direct and proximate result of the UCC letters, Gotham will not be able to distribute timely payroll to its approximately 75 employees, many of whom, on information and belief, live paycheck to paycheck.

13. Upon information and belief, Dependance may have been already collected payments from Gotham's customers, which typically would amount to over $200,000 per week. If Defendant is not temporarily restrained from continuing its collection efforts all without any

judicial hearing on the merits, Gotham will not meet its payroll obligations, and Gotham's employees will walk off the job.

**WHEREFORE**, pursuant to applicable case law and Fed. R. Civ. P. Rule 65, Plaintiffs respectfully request that enter an Order as follows: (a) enjoining the enforcement of the MCA; (b) temporarily restraining and enjoining Defendant from employing any methods of enforcement or collection of any alleged debt allegedly owed by Plaintiffs to Defendant, including but not limited to via de issuance of Letters of Attornment; (c) directing Defendant to withdraw any Letters of Attornment previously sent out; (d) directing that during the pendency of this action, any Letters of Attornment sent by Defendant or that has already been sent by Defendant shall be null and void and of no force or effect, and that any third party served with such UCC lien letter ignore same; (e) granting such other and further relief as this Court deems proper.

This declaration is submitted pursuant to 28 U.S.C. §1746. I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, NY
       December 4, 2025

By: _____
       Cory Perlson